## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

JAMES HODGES,

        Plaintiff,

v.                                                    Case No.   3:23-cv-1375-MMH-PDB

MARK A. HUNTER, in his official
capacity as Sheriff of Columbia
County Sheriff's Office, RANDALL
HARRISON, and JAYME GOHDE,

        Defendants.

_____

# O R D E R

**THIS CAUSE** is before the Court on Defendant Sheriff Hunter's Motion to Dismiss and Motion to Strike (Doc. 13; Motion), filed January 4, 2024. In the Motion, Defendant Mark A. Hunter (the Sheriff), in his official capacity as Sheriff of Columbia County Sheriff's Office (CCSO), asks the Court to dismiss Count XI and Count XVI of Plaintiff James Hodges' Complaint for Damages and Demand for Jury Trial (Doc. 1; Complaint). See Motion at 6-16. In the alternative, the Sheriff asks the Court to strike Hodges' claim for punitive damages in Count XI and his claims for punitive damages and attorney's fees in Count XVI. See id. at 16. Hodges responded to the Motion on January 18, 2024. See Plaintiff's Response in Opposition to Defendant's Motion to Dismiss

and Motion to Strike (Doc. 18; Response). Accordingly, this matter is ripe for review.

## I. Standard of Review

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. Bellsouth Telecomm., 372 F.3d 1250, 1262–63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary," the complaint should "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). The "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," which simply "are not entitled to [an] assumption of truth." Iqbal, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 570).

## II. Background[1]

On October 31, 2022, Defendant Jayme Gohde (Gohde), a CCSO Deputy, was on patrol when she stopped Hodges as he was walking home. Complaint ¶¶ 8–9. Hodges, who is visually impaired, uses a navigational aide as needed. Id. When Gohde stopped Hodges, she asked him what was in his back pocket. Id. ¶ 10. Hodges responded that it was a navigational aide and asked Gohde "'what's the problem are you a tyrant?'" Id. ¶ 11. Gohde responded "'yeah, I am actually

---

[1] In considering the Motion, the Court must accept all factual allegations in the Complaint as true, consider the allegations in the light most favorable to Hodges, and accept all reasonable inferences that can be drawn from such allegations. Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003); Jackson v. Okaloosa County, 21 F.3d 1531, 1534 (11th Cir. 1994).

what is your name and date of birth?'" Id. ¶ 12. Hodges then asked what Gohde's reasonable suspicion was. Id. ¶ 13. Gohde responded that it looked like Hodges had a firearm in his back pocket.   Id. ¶ 13. While standing a few inches from Hodges, Gohde informed Hodges that she was not sure whether Hodges had a firearm or not. Id. ¶ 15.   Hodges then removed the navigational aid from his pocket and presented it to Gohde. Id. ¶ 17. When Hodges asked whether he was detained, Gohde responded, "'Yeah you are.'" Id. ¶ 18. Gohde then asked Hodges for his identification, and Hodges asked for a supervisor. Id. ¶ 19. At some point, Deputy Randal Harrison (Harrison), the on-duty supervisor, was present and on the scene. Id. ¶ 20. Hodges showed the navigational aid to Harrison "demonstrating for the second time that he was not armed." Id. ¶ 21. Nevertheless, according to Hodges, Harrison and Gohde placed him in handcuffs "in part due to what they perceived to be a disrespectful attitude." Id. ¶ 23. Harrison and Gohde then searched Hodges and asked him, "'[W]as that so hard?'" Id. ¶ 25. Hodges requested Gohde and Harrison's name and badge numbers, and in response Harrison told Gohde "'you know what? Put him in jail for resisting.'" Id. ¶ 26. Gohde arrested Hodges and transported him to the Columbia County Jail. Id. ¶ 27.

According to Hodges, Gohde charged Hodges with resisting without violence "merely because he exercised his right to speak freely in requesting [the officers] names and badge[] numbers." Id. ¶ 30. Throughout the encounter,

Hodges made Harrison and Gohde aware of his disability and his need for the use of a navigational aid. Id. ¶ 36. Despite this, Harrison and Gohde continued to question Hodges as to why he was not using the device. Id. ¶ 38. Soon after the incident, the Sheriff acknowledged concerns about the arrest and stated that he was troubled by the exchange. Id. ¶ 40. Following an investigation, CCSO found that both Harrison and Gohde unlawfully detained, searched, and arrested Hodges, and also violated the CCSO Code of Conduct. Id. ¶¶ 41–42. The Sheriff disciplined Harrison and Gohde, ordered them to attend training, and suspended them without pay. Id. ¶¶ 42–43.

In Counts I–X and XII–XV of the Complaint, Hodges asserts various claims against Harrison and Gohde all arising from the October 31, 2022 encounter and arrest. See generally Complaint. Those claims are not the subject of the Motion, and the Court will not address them further at this time. Instead, the Court addresses the claims against the Sheriff.

In Count XI, Hodges asserts a claim under 42 U.S.C. § 1983 against the Sheriff premised on his failure to train and supervise Harrison and Gohde. Id. ¶¶ 138–49[2]. In Count XVI, Hodges asserts a state law negligence claim against the Sheriff premised on vicarious liability and the Sheriff's own breach of duty owed to Hodges. Id. ¶¶ 155–62.   In the Motion, the Sheriff asks the Court to

---

[2] In the Complaint, Hodges repeats ¶¶ 141–157 starting on page 29. Count XI starts on page 24 and ends on page 26. Count XVI starts on page 31 and ends on page 32.

dismiss the claims asserted against him in Counts XI and XVI of the Complaint. Motion at 2, 6-16. In the alternative, the Sheriff asks the Court to strike the claim for punitive damages in Count XI, and the claims for punitive damages and attorney's fees in Count XVI. Motion at 2, 16.

## III.   Discussion

Having carefully reviewed the Complaint, the Motion, the Response, and the applicable law, the Court concludes that the Sheriff's Motion is due to be granted, in part, and otherwise denied as moot.

### A. Count XI: 42 U.S.C. § 1983 Failure to Supervise

In Count XI, Hodges asserts a claim under 42 U.S.C. § 1983. Complaint ¶¶ 138–49. "In order to prevail on a civil rights action under § 1983, a plaintiff must show that he or she was deprived of a federal right by a person acting under the color of state law." Griffin v. City of Opa-Locka, 261 F.3d 1295, 1303 (11th Cir. 2001). In support of this claim, Hodges alleges that the Sheriff violated his constitutional rights by failing to properly train Harrison and Gohde. Complaint ¶¶ 138–149. Specifically, Hodges asserts that, as the head of the CCSO, the Sheriff was responsible for "properly training officers in the constitutional limitations during reasonable investigations." Id. ¶ 139. Hodges alleges that "Harrison and Gohde manufactured the charge of resisting arrest without violence," actions for which the Sheriff has taken responsibility. Id. ¶¶ 141, 143. According to Hodges, the Sheriff "knew omissions in training and

reporting, together with unenforced policy and procedures, would pose a serious risk and such inaction would result in violations to constitutionally protected rights." Id. ¶ 144. Hodges asserts that the Sheriff's failure to properly train his officers "demonstrates a deliberate indifference to the constitutional rights afforded the citizens." Id. ¶ 145. He further alleges that while the Sheriff "had written policies in place" concerning officer conduct, "it was the policy, practice and custom of [the Sheriff]" to ignore the policies and tolerate "unreasonable search and seizures." Id. ¶ 146. In sum, in Hodges' view, the Sheriff's indifference to training of his officers led to the infringement of his constitutional rights. Id. ¶ 148.

In the Motion, the Sheriff argues that Hodges has failed to state a claim under § 1983 because Hodges presents only legal conclusions and unsupported conjecture. Motion at 2. According to the Sheriff, Hodges failed to allege facts suggesting the existence of a policy or custom that caused Hodges' injury. Id. at 8–9. Additionally, the Sheriff contends that Hodges failed to allege facts showing a longstanding and widespread practice of constitutional violations. Id. at 9. Similarly, the Sheriff argues that Hodges has failed to present any factual allegations suggesting that the Sheriff knew of a need to train or supervise his officers. Id. at 11.

In the Response, Hodges argues that he has alleged the existence of a custom, policy, or practice because the Sheriff's failure to train amounts to

deliberate indifference. Response at 3–4. In support, Hodges points to his allegations that the Sheriff recognized the need to train through his own admission of the wrongful nature of Harrison and Gohde's actions. Id. at 4.

As an initial matter, the Court notes that "[f]or liability purposes, a suit against a public official in his official capacity is considered a suit against the local governmental entity he represents." Vineyard v. County of Murray, 990 F.2d 1207, 1210 n.3 (11th Cir. 1993) (citation omitted). Therefore, Hodges' claim against the Sheriff in his official capacity is a municipal liability claim against Columbia County. The Supreme Court of the United States has soundly rejected the theory of respondeat superior as a basis for liability in § 1983 actions. See Monell v. Dept. of Soc. Servs., 436 U.S. 658 (1978). Instead, a municipality may be liable in a § 1983 action "only where the municipality itself causes the constitutional violation at issue." Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., 402 F.3d 1092, 1115 (11th Cir. 2005) (citations omitted). Thus, a plaintiff must establish that an official policy or custom of the municipality was the "moving force" behind the alleged constitutional deprivation. See Monell, 436 U.S. at 693–94. "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." Sewell v. Town of Lake Hamilton, 117 F.3d 488, 489 (11th Cir. 1997) (citation omitted). The policy requirement is designed to "distinguish acts of the municipality from acts of employees of the

municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." Grech v. Clayton County, 335 F.3d 1326, 1329 n.5 (11th Cir. 2003) (en banc) (quotation omitted). Indeed, municipal liability arises under § 1983 only where "'a deliberate choice to follow a course of action is made from among various alternatives' by city policymakers." City of Canton v. Harris, 489 U.S. 378, 389 (1989) (quoting Pembaur v. Cincinnati, 475 U.S. 469, 483–84 (1986)). A municipality will rarely have an officially adopted policy that permits a particular constitutional violation; therefore, in order to state a cause of action for damages under § 1983, most plaintiffs must demonstrate that the municipality has a custom or practice of permitting the violation. See Grech, 335 F.3d at 1330; McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004). The Eleventh Circuit has defined "custom" as "a practice that is so settled and permanent that it takes on the force of law" or a "persistent and wide-spread practice." Sewell, 117 F.3d at 489.

In some circumstances, "the failure to provide proper training may fairly be said to represent a policy for which the [municipality] may be held liable if it actually causes injury." City of Canton, 489 U.S. at 390. However, failure to train can lead to municipal liability "only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants [such that the failure to train] can be properly thought of as a city 'policy or custom' that is actionable under § 1983." Id. at 388–89.

Thus, in order to assert such a claim, a plaintiff must "present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998); see also Underwood v. City of Bessemer, 11 F.4th 1317, 1333 (11th Cir. 2021). The Eleventh Circuit has repeatedly held that "without notice of a need to train or supervise in a particular area, a municipality is not liable as a matter of law for any failure to train or supervise." Gold, 151 F.3d at 1351. Indeed, "the need for such training must be plainly obvious to [a municipality's] decisionmakers," such as where there is "evidence of a history of widespread prior abuse." Wright v. Sheppard, 919 F.2d 665, 674 (11th Cir. 1990); see also Rocker v. City of Ocala, 355 F. App'x 312, 314 (11th Cir. 2009) (per curiam).[3] Notably, the Supreme Court, in dictum, has left open the possibility that in some instances "a need to train could be 'so obvious,'" that a municipality could be held liable even without a pattern of prior constitutional violations. Gold, 151 F.3d at 1352 (quoting City of Canton, 489 U.S. at 390). As an example, the Supreme Court pointed to the need to train officers in the use of deadly force where the officers are provided firearms. City of Canton, 489 U.S. at 390 n.10.

---

[3] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060–61 (11th Cir. 2022); see also Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

Here, the Court concludes that Hodges has not plausibly alleged that any CCSO policy was the "moving force" behind the alleged constitutional harms that he suffered. While Hodges relies on the Sheriff's statement accepting responsibility for Harrison and Gohde's actions, he fails to allege facts showing that the Sheriff had any policy that led to the harms suffered. Complaint ¶ 144. To the contrary, Hodges' own allegations in the Complaint reflect that Harrison and Gohde's actions violated CCSO policy, and the Sheriff disciplined them for the violations. Id. ¶ 41–43.   Moreover, Hodges fails to present allegations suggesting that the municipality had a custom or practice permitting the constitutional violations. Despite noting that the Sheriff reprimanded both deputies after the incident, Hodges states, without any factual support, that the Sheriff had a policy to not enforce policies concerning officer conduct. Complaint ¶ 146. This bare conclusion is wholly insufficient to satisfy his burden of presenting factual allegations that plausibly state a claim of municipal liability.

The Court further concludes that Hodges has not plausibly alleged that the Sheriff knew of omissions in training that led to the constitutional violations. Hodges simply states in a conclusory manner that the Sheriff knew of omissions in training, but never alleges what those omissions were or what facts support his claim of knowledge on the part of the Sheriff. Complaint ¶ 143–44. In the Response, Hodges asserts that the Sheriff was deliberately indifferent to the need to train because the Sheriff knew of a need to train or

supervise and failed to do so. Response at 3–4. He further states that the need to train was so obvious because the officers were unlawfully detaining citizens. Id. at 4. However, Hodges has not alleged a single instance of similar conduct occurring before Hodges' encounter with Harrison and Gohde. And he certainly has not alleged facts suggesting a pattern of misconduct of which the Sheriff was aware.

In the Complaint, Hodges presents only conclusory statements about the customs, policies, and training practices of the Sheriff. As the Supreme Court instructs, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (second alteration in original) (citation omitted) (quoting Twombly, 550 U.S. at 555, 557). Here, Hodges has failed to assert facts supporting a plausible claim that the Sheriff knew of a need to train his officers and then made a deliberate choice not to take any action. As such, Hodges failed to plausibly allege that the Sheriff should be liable for failing to train his employees. Accordingly, as to the claim of municipal liability in Count XI, the Sheriff's Motion is due to be granted.

**B. State Law Negligence Claim**

In Count XVI, Hodges asserts a state law negligence claim against the Sheriff. Complaint ¶¶ 155–62. Reviewing the allegations in Count XVI,

including Hodges' assertion that Harrison and Gohde acted "without willfully [sic], wanton and malicious intent," id. ¶ 161, it is unclear whether Hodges intends to assert a claim of negligence against the Sheriff under a vicarious liability theory based upon the conduct of the individual deputies or a claim of negligence by the Sheriff himself. See Complaint ¶ 156 (asserting that the Sheriff "is liable for the injuries caused by the negligent or wrongful acts or omissions of any employee of CCSO"); id. ¶ 159 (asserting that the Sheriff "breached this duty when he negligently failed to take the steps necessary to protect Hodges"); Response at 5 (asserting that "Plaintiff has established the underlying action against the agents . . . in addition to the requisite elements for vicarious liability").

Regardless of which claim Hodges intends to pursue, the Sheriff argues that Count XVI should be dismissed because the intentional acts that Hodges has pled throughout the Complaint cannot support a claim of negligence. Motion at 2. The Sheriff further contends that Hodges fails to state a claim of negligence because the duty of care owed to Hodges is one owed to the general public which cannot support an individual's claim of negligence. Id. at 13–14. Finally, the Sheriff maintains that he is immune from suit for the alleged negligent training and supervision because training and supervision of his officers are discretionary, not operational, functions. Id. at 15. In the Response, Hodges argues that the Sheriff owed him a duty of care to keep him reasonably

safe and that the Sheriff breached this duty by not keeping Hodges safe. Response at 4–5. Hodges further contends that his claim is premised on the officers' "failure to treat Hodges fairly as a citizen with a disability." Id. at 5. Finally, Hodges argues that the Sheriff is not immune because the duty to treat disabled persons in custody with reasonable care is an operational level function. Id. at 5.

In section 768.28 of the Florida Statutes, the State of Florida waives sovereign immunity for tort actions against municipalities and its officers and employees under certain conditions. However, section 768.28 provides immunity to a state employee

> for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer ... acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

Fla. Stat. § 768.28(9)(a). With respect to official capacity or municipal liability claims, unlike federal § 1983 claims, Florida law allows the official or municipality to be held vicariously liable for the tortious acts of its employees. See Young v. Borders, No. 5:13-cv-113-Oc-22PRL, 2014 WL 11444072, *21 (M.D. Fla. Sept. 18, 2014);[4] Saballos v. Bonilla, No. 05-21928-CIV, 2006 WL

---

[4] The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority.  See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects").

3940552, *8 (S.D. Fla. Dec. 5, 2006). Indeed, except when an employee acts outside the scope of his employment or "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property," Florida law provides that

> [t]he exclusive remedy for injury or damage suffered as a result of an act, event, or omission of an officer . . . is by action against the governmental entity, or the head of such entity in her or his official capacity, or the constitutional officer of which the officer, employee, or agent is an employee . . . .

Fla. Stat. § 768.28(9)(a); see also Searer v. Wells, 837 F. Supp. 1198, 1201 (M.D. Fla. 1993).[5] Thus, where an officer, in the course of his or her employment with the municipality, engages in a wrongful act but does not do so maliciously or in bad faith, the agency is the party to be held responsible. See, e.g., Gregory v. Miami-Dade County, 719 F. App'x 859, 873 (11th Cir. 2017); Desai v. Farmer, No. 5:12-cv-495-Oc-34PRL, 2014 WL 5474417, *9 (M.D. Fla. Oct. 29, 2014); Hargis v. City of Orlando, No. 6:12-cv-723-Orl-37KRS, 2012 WL 6089715, *6 n.12 (M.D. Fla. Dec. 7, 2012); Petithomme v. County of Miami Dade, No. 11-20525-CIV, 2011 WL 3648622, *3 n.2 (S.D. Fla. Aug. 16, 2011); Peguero v. Delaurentos, No. 11-20069-CIV-JORDAN, 2011 WL 13223704, *1 (S.D. Fla. May 12, 2011); Burks v. Beary, 713 F. Supp. 2d 1350, 1360–61 (M.D. Fla. 2010).

---

[5] A county, as well as its associated units, such as a sheriff's office, falls within the ambit of section 768.28(9)(a). See, e.g., Shehada v. Tavss, 965 F. Supp. 1358, 1375 (S.D. Fla. 2013) (noting municipalities are governed by Fla. Stat. § 768.28); Battiste v. Lamberti, 571 F. Supp. 2d 1286, 1305–06 (S.D. Fla. 2008) (Fla. Stat. § 768.28 applies to Sheriff).

In other words, under Florida law, a party can succeed in a tort claim against an individual officer, or the government entity who employed that officer, but not both. See Ullman v. Fla. Dep't of Corr., No. 5:17-cv-66-Oc-30PRL, 2017 WL 2103392, *2 (M.D. Fla. May 15, 2017) (citing McGhee v. Volusia County, 679 So. 2d 729, 733 (Fla. 1996)); Desai, 2014 WL 5474417, at *9; Hargis, 2012 WL 6089715, at n.12. Applying this statutory framework, the Court considers Hodges' state law claim.

In Count XVI, Hodges alleges that Gohde and Harrison acted "without willfully [sic], wanton and malicious intent." Complaint ¶ 161. Thus, it appears that the Sheriff, in his official capacity, rather than the individual deputies, is the party Hodges seeks to hold responsible for this negligence claim. See, e.g., Shehada v. Tavss, 965 F. Supp. 2d 1358, 1375 (S.D. Fla. 2013). When presented with a negligence claim against a state or its subsidiary, the Court "should first determine whether the circumstances alleged would subject a private person to liability under Florida law." Lewis v. City of St. Petersburg, 260 F.3d 1260, 1262 (11th Cir. 2001) (citing Kaisner v. Kolb, 543 So. 2d 732, 734 (Fla. 1989)). To state a claim of negligence, a plaintiff must allege the elements of duty, breach, causation, and damages. Id. (citing Paterson v. Deeb, 472 So. 2d 1210, 1214 (Fla. 1st DCA 1985)); see also Wynn v. City of Lakeland, 727 F. Supp. 2d 1309, 1316 (M.D. Fla. 2010). If the plaintiff can meet this burden, then the Court must decide "whether the challenged actions are nonetheless acts which required the

exercise of basic governmental discretion, as opposed to implementation of an already established policy." <u>Lewis</u>, 260 F.3d at 1262. A "governmental agency is immune from tort liability based upon actions that involve its 'discretionary' functions." <u>Cook</u>, 402 F.3d at 1117 (quoting <u>Lewis</u>, 260 F.3d at 1266); <u>see also</u> <u>Gelbard v. City of Miami</u>, 845 F. Supp. 2d 1338, 1340 (S.D. Fla. 2012) (quoting <u>Lewis</u>, 260 F.3d at 1264).

The Court now considers whether the circumstances surrounding Hodges' arrest "would subject a private person to liability under Florida Law." <u>Lewis</u>, 260 F.3d at 1262. Turning first to Hodges' claim if intended to be a claim of vicarious liability for the negligence of Harrison and Gohde, the Court observes that Hodges does not allege any facts suggesting that the individual officers were negligent. Instead, he contends that they committed intentional torts of battery and false imprisonment. Notably, "[a] claim for negligence cannot be premised solely on a defendant's alleged commission of an intentional tort." <u>Brown v. J.C. Penney Corp., Inc.</u>, 521 F. App'x 922, 924 (11th Cir. 2013) (citing <u>City of Miami v. Sanders</u>, 672 So. 2d 46, 48 (Fla. 3d DCA 1996)). Battery is an intentional tort and as such cannot support a claim of negligence. <u>See</u> <u>Sanders</u>, 672 So. 2d at 47-48. And, so too is false imprisonment. <u>See</u> <u>Cordoves v. Miami-Dade Cty.</u>, 92 F. Supp. 3d 1221, 1233 (2015); <u>Lewis v. City of West Palm Beach, Fla.</u>, 561 F.3d 1288, 1294 (11th Cir. 2009) (noting "it is inapposite to allege the negligent commission of an intentional tort"). Thus, to the extent Hodges'

negligence claim in Count XVI is premised on the alleged negligence of Harrison and Gohde, it fails to present a viable claim under Florida law.

Alternatively, if Hodges' claim is based on the alleged negligence of the Sheriff himself, even if Hodges asserts a claim that would subject a private person to liability, the Sheriff is immune. This is so because the acts Hodges complains of were an exercise of discretionary functions. Cook, 402 F.3d at 1117. A sheriff's "decision regarding how to train [his] officers and what subject matter to include in the training is clearly an exercise of governmental discretion regarding fundamental questions of policy and planning." Id. at 1118. As such, Hodges' challenge based upon the Sheriff's alleged negligent training is "'barred by" the 'discretionary function' exception to [Florida's] waiver of sovereign immunity.'" Id. (quoting Lewis, 260 F.3d at 1266). Thus, the Court concludes that Count XVI is due to be dismissed because, to the extent Hodges' claim is an attempt to assert vicarious liability for negligence of the officers, Hodges has failed to state a claim, and to the extent he pleads a claim of negligent training by the Sheriff, the claim is barred by sovereign immunity.[6]

## IV. Conclusion

For the foregoing reasons, the Court concludes that the Sheriff's Motion is due to be granted, in part, and denied as moot, in part. Specifically, the Court

---

[6] Because the claims against the Sheriff in Counts XI and XVI are due to be dismissed, the Court need not address his alternative request to strike certain of Hodges' damages claims. As such, these requests are denied as moot.

will dismiss Count XI (§ 1983 claim against the Sheriff) and Count XVI (negligence claim against the Sheriff). Accordingly, it is

**ORDERED:**

1. Defendant Sheriff Hunter's Motion to Dismiss and Motion to Strike (Doc. 13) is **GRANTED, in part,** and **DENIED as moot, in part.**

   A. The Sheriff's Motion is **GRANTED** to the extent that Counts XI and XVI of the Complaint are **DISMISSED**.

   B.  In all other respects, the Sheriff's Motion is **DENIED as moot**.

2. The Clerk of the Court is directed to terminate the Sheriff as a defendant.

3. The Court will withhold entry of judgment until all claims in this action are resolved.

   **DONE AND ORDERED** in Jacksonville, Florida this 21st day of August, 2024.

**MARCIA MORALES HOWARD**
United States District Judge

i61

Copies to:

Counsel of Record